UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SEVILLE McCLENDON,<br>    Plaintiff,<br><br>          v.<br><br>PEARSON, *et al.*,<br>    Defendants. | No. 3:25-cv-1760 (SRU) |

## INITIAL REVIEW ORDER

*Pro se* plaintiff Seville McClendon ("McClendon"),[1] an inmate on special parole and currently held at Carl Robinson Correctional Institution ("Robinson CI"),[2] filed this civil rights action under 42 U.S.C. § 1983 against parole officials and prison staff at Hartford Correctional Center ("Hartford CC"). Doc. No. 1. Specifically, McClendon sues Special Parole Officer Pearson ("Pearson"), Correctional Officer Santiago ("Santiago"), Hartford CC Warden Long ("Warden Long"), the Hartford CC Deputy Warden, the Hartford CC First Shift Commander, and Connecticut Board of Pardons and Parole ("BOPP") Chairwoman Jennifer M. Zaccagnini ("Chairwoman Zaccagnini") (collectively, the "Defendants").

For the following reasons, McClendon may pursue his Eighth Amendment excessive force claim against special parole officer Pearson. All other claims are **dismissed,** and all other defendants are **terminated**.

---

[1] Information on the Connecticut Department of Correction ("DOC") website shows McClendon as being held at Robinson Correctional Institution ("Robinson CI") on a special parole detainer. *See* Conn. Dep't Corr., Inmate Locator ("DOC Inmate Locator"), https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=306118 (last visited Feb. 13, 2026). I take judicial notice of that public record. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, 2023 WL 1818545, at *2 n.1 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).

[2] "Unlike regular parole, which allows an inmate to be released from prison under supervision prior to the completion of his or her maximum prison sentence, special parole is an additional period of supervision akin to probation that begins only *after* the expiration of an inmate's maximum term of imprisonment." *Blango v. Ludovico*, 2024 WL 988164, at *2 (D. Conn. Mar. 7, 2024).

I.     **FACTUAL BACKGROUND**

Below is a summary of the basic factual allegations McClendon alleges in his complaint.

On June 12, 2028, McClendon alleges that the Connecticut BOPP "force[d]" him to sign a Special Parole Acknowledgement Agreement. Compl., Doc. No. 1 ¶ 2. McClendon signed that agreement so he could have a "regular parole hearing" to avoid serving a term of special parole. *Id.* When prison officials released McClendon from prison in November 2018, the BOPP "violated [or] breached" that agreement, forcing McClendon to agree to a term of special parole. *Id.* ¶ 3.

McClendon was imprisoned at Hartford CC on August 1, 2025 while awaiting sentencing for a violation of his probation or conditional discharge. *See id.* ¶ 5; DOC Inmate Locator. On that date, McClendon was dressing himself in his cell when Pearson arrived at McClendon's cell. Compl., Doc. No. 1 ¶ 5. McClendon's genital area and buttocks were exposed as Pearson arrived. *See id.* McClendon told Pearson that Pearson was not McClendon's special parole officer. *Id.* ¶ 6. McClendon also communicated to Pearson that McClendon was not signing any documents without first speaking to his lawyer and was uncomfortable speaking to Pearson while he was dressing. *Id.* McClendon requested that Pearson should leave until McClendon was dressed, but Pearson did not leave. *Id.* ¶¶ 6-7.

Instead, Pearson looked at McClendon "with lustful eyes," and told McClendon that McClendon's state of undress did not matter to him and would not prevent Pearson from doing what he was there to do. *Id.* ¶ 7. Pearson then "threw items" at McClendon from outside the cell. *Id.* The "items" entered McClendon's cell and cut McClendon's leg, drawing blood. *Id.*

Once dressed, McClendon went to "the bubble" to show correctional officers his injuries. *Id.* ¶ 8. There, McClendon also asked to speak to a state trooper and medical staff about the

2

injuries caused by Pearson. *Id.* Instead, the officer wrote a note for officers on the next shift to contact the state trooper because the correctional officer's shift was ending. *Id.* Correctional officers on the next shift failed to do so. *Id.* McClendon described the incident with Pearson to every lieutenant he saw for the next three days. *Id.* None of those lieutenants took action. *Id.*

The following day, on August 2, 2025, McClendon had an anxiety and panic attack "from being sexually victimized [and] physically assaulted by [special parole officer] Pearson." *Id.* ¶ 9. McClendon remained on the floor of the tier for twenty-to-thirty minutes. *Id.* Correctional Officer Santiago walked by McClendon several times while McClendon was still having a panic attack. *Id.* Santiago told McClendon that McClendon "better find a way to get up" because Santiago was not calling medical staff. *Id.*

On August 3, 2025, McClendon called the "[Prison Rape Elimination Act ('PREA')] unit" and a state trooper and told them what happened. *Id.* ¶ 10. After hearing McClendon call the PREA unit and the state trooper, Hartford CC prison officials transferred McClendon to another prison on August 4, 2025. *Id.* ¶ 11. McClendon alleges the officials transferred him to cover up what happened. *Id.*

## II.  STANDARD OF REVIEW

Under section 1915A of Title 28 of the United States Code, I must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). I then must "dismiss the complaint, or any portion of the complaint," if it "is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). Dismissal under this provision may be with or without prejudice. *See Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004).

In reviewing complaints under section 1915A, I must construe them "liberally and interpret[] [them] to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).  A civil complaint must include sufficient facts to afford defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  Further, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Conclusory allegations are not sufficient.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.     DISCUSSION

Although McClendon's complaint does not clearly articulate his grounds for relief, I liberally construe the complaint as suggesting due process, excessive force, sexual harassment, and deliberate indifference to serious medical needs claims.  I will discuss each in turn.

#### A. Due Process Claims

McClendon alleges that the BOPP "breached the contract the[y] made with [McClendon]" when BOPP "illegally lock[ed] [McClendon] up without a warrant" after McClendon violated the terms of the special parole on which he was "illegally" placed.  *See* Compl., Doc. No. 1 ¶ 4.  To the extent that McClendon maintains that BOPP "breached the contract" with McClendon, "a contract dispute, in and of itself, is not sufficient to give rise to a cause of action under section 1983[.]" *Id.*; *Walentas v. Lipper*, 862 F.2d 414, 418 (2d Cir. 1988).  However, a breach of contract may give rise to a cause of action if the breach involved "the deprivation of a protectible property interest within the meaning of the due process clause." *Walentas*, 862 F.2d at 418.

McClendon's allegations that prison officials "force[d]" McClendon to sign a Special Parole Acknowledgement Agreement in June 2018 and then later "illegally" incarcerated him for violating his special parole sound in procedural due process. *See* Compl., Doc. No. 1 ¶¶ 2, 4; *Johnson v. Rowe*, 2025 WL 1786083, at *5 (D. Conn. June 27, 2025) (construing the plaintiff's allegation that he was "verbally forced to sign a [disciplinary] ticket" as a procedural due process claim); *Morrow v. Dep't of Corr.*, 2018 WL 5817003, at *1 (D. Conn. Nov. 6, 2018) (analyzing plaintiff's allegation that prison officials "confin[ed] him in prison under an illegal sentence" as Fourteenth Amendment due process claim).

To the extent McClendon asserts a procedural due process claim related to the BOPP forcing him to sign a Special Parole Acknowledgement Agreement on June 12, 2018, that claim is barred by the statute of limitations. Compl., Doc. No. 1 ¶ 2; *Connelly v. Komm,* 2021 WL 5359738, at *3 (D. Conn. Nov. 16, 2021) ("The statute of limitations for claims in Connecticut under section 1983 . . . is three years."). Any claim that BOPP later "breached" that agreement and incarcerated McClendon in November of 2018 is likewise barred by the statute of limitations. Compl., Doc. No. 1 ¶¶ 3-4.

Moreover, any claim that McClendon was illegally incarcerated on a special parole violation is also barred by the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). In *Heck*, the Supreme Court held that:

> [T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a [section] 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . .

*Heck*, 512 U.S. at 486-87 (footnote omitted)).

Courts apply *Heck* "to prevent a state prisoner from bringing a Section 1983 action challenging a parole revocation unless that revocation decision is reversed or the underlying conviction is set aside." *Lee v. Donnaruma*, 63 F. App'x 39, 41 (2d Cir. 2003). *Heck* bars any procedural due process claim related to his sentence because McClendon does not claim that his revocation sentence was reversed or that the underlying conviction was set aside. Accordingly, McClendon's due process claims are dismissed as time-barred or *Heck*-barred. 28 U.S.C. § 1915A(b)(1).

**B.**     **Sexual Harassment Claim**

McClendon states that Pearson "sexually harassed" him. Compl., Doc. No. 1 ¶ 12. Presumably, that allegation flows from McClendon's assertion that Pearson looked at McClendon "with lustful eyes" while McClendon was undressed. *Id.* ¶ 7. The Second Circuit has held that "sexual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment." *Boddie v. Schnieder*, 105 F.3d 857, 860-61 (2d Cir. 1997). Thus, "allegations of [sexual] abuse" are sometimes "cognizable as Eighth Amendment claims." *Id.* at 861. Nevertheless, the Second Circuit requires the prisoner to allege "a harm of federal constitutional proportions," which entails more than "isolated episodes of harassment and touching." *Id.*

The "isolated incident" involving Pearson looking at McClendon "with lustful eyes" does not give rise to a viable Eighth Amendment claim. *See* Compl., Doc. No. 1 ¶ 7; *Boddie*, 105 F.3d at 861. *Cf. Holland v. City of New York*, 197 F. Supp. 3d 529, 547 (S.D.N.Y. 2016) (stating that an Eighth Amendment claim of sexual harassment requires "at the very least, alleg[ations of] egregious sexual conduct"); *Jones v. Harris*, 665 F. Supp. 2d 384, 396 (S.D.N.Y. 2009)

("[V]erbal sexual harassment of a prisoner, without physical contact, does not violate the Eighth Amendment").

Therefore, I dismiss McClendon's Eighth Amendment claim for sexual harassment against Pearson pursuant to 28 U.S.C. § 1915A(b)(1).

**C.    Excessive Force Claim**

McClendon also alleges that Pearson "threw items" into McClendon's cell, resulting in a cut to McClendon's leg. Compl., Doc No. 1 ¶ 7. I liberally construe this allegation as suggesting an excessive force claim. I must evaluate McClendon's excessive force claim under the Eighth Amendment, because McClendon was on special parole when this allegedly occurred. *See Shabazz v. Sharr*, 2020 WL 646171, at *3 (D. Conn. Feb. 11, 2020) ("[P]ersons on special parole remain under the custody of the Department of Correction and, therefore, [their] claims are cognizable under the Eighth, not the Fourteenth, Amendment[.]").

The Eighth Amendment's prohibition on the "unnecessary and wanton infliction of pain" has been interpreted to encompass the use of excessive force by correctional officers against an incarcerated individual. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). To state a claim for excessive force under the Eighth Amendment, an incarcerated individual must allege both (1) that prison officials subjected him or her to "sufficiently serious" harmful conduct; and (2) that the officials did so with a culpable state of mind. *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015) (internal citation and quotation marks omitted). Both inquiries are fact-dependent; the Supreme Court has provided guidance, but not bright-line rules, for determining whether the conduct of prison officials implicates the Eighth Amendment. *See Hudson*, 503 U.S. at 8-9 ("[T]he Eighth Amendment's prohibition of cruel and unusual punishments draws its meaning from the evolving standards of decency that mark the progress of a maturing society . . . .").

Conduct by prison officials is "objectively harmful enough . . . to reach constitutional dimensions" where it is "incompatible with evolving standards of decency" or involves "the unnecessary and wanton infliction of pain." *Crawford*, 796 F.3d at 256 (internal citations and quotation marks omitted). Not "every malevolent touch by a prison guard gives rise to a federal cause of action," and the "*de minimus* use[] of physical force" does not implicate the Eighth Amendment, "provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (internal citations and quotation marks omitted). Although injury or lack thereof may be relevant to the inquiry of whether excessive force was used, "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id.* The "malicious[ ] and sadistic[ ]" use of force violates "contemporary standards of decency" whether or not the force occasions serious injury. *Hudson*, 503 U.S. at 9.

Objectively harmful conduct alone is not enough, however; prison officials must also have acted with a sufficiently culpable state of mind in inflicting harm. *See Crawford*, 796 F.3d at 256. The "core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. If "no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may . . . be sufficient evidence of a culpable state of mind." *Boddie*, 105 F.3d at 861. "[T]he need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response'" indicate whether

the use of force was indeed driven by a legitimate purpose or instead wanton or unnecessary. *Hudson*, 503 U.S. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). Additionally, "the extent of injury suffered by an inmate . . . may suggest 'whether the use of force could plausibly have been thought necessary.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

Here, McClendon alleges that Pearson "threw items at [McClendon] from outside the cell" after McClendon told Pearson to leave so that McClendon could get dressed. Compl., Doc No. 1 ¶¶ 6-7. The "items came into [McClendon's] cell" and cut McClendon on the leg, breaking the skin and causing him to bleed. *Id.* ¶ 7. McClendon's allegations are somewhat thin; however, they are sufficient to satisfy the objective component because throwing an object at a defenseless inmate is "incompatible with evolving standards of decency" and involves "the unnecessary and wanton infliction of pain." *Crawford*, 796 F.3d at 256 (internal quotation marks omitted) (quoting *Hudson*, 503 U.S. at 10). Moreover, I cannot discern from the face of the complaint that Pearson threw items at McClendon "in a good faith effort to maintain or restore discipline," so I will conclude, for purposes of initial review, that Pearson did so "sadistically to cause harm." *Hudson*, 503 U.S. at 6-7 (internal citation and quotation marks omitted).

Therefore, McClendon's Eighth Amendment excessive force claim may proceed.

D.     **Deliberate Indifference to Serious Medical Needs Claim**

McClendon's allegations that correctional officers did not permit McClendon to pursue medical treatment for the cuts on his leg or provide medical assistance for the anxiety and panic attack he later experienced suggest an Eighth Amendment deliberate indifference to serious medical needs claim. Compl., Doc No. 1 ¶¶ 8-9.

The Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners." *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013)

9

(internal quotation marks omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05.

A claim for deliberate indifference to medical or mental health needs is comprised of objective and subjective elements. *Spavone,* 719 F.3d at 138. Objectively, the plaintiff must allege a "sufficiently serious" medical need or mental health condition. *Spavone,* 719 F.3d at 138 (internal citations and quotation marks omitted). To determine whether a condition is "sufficiently serious," courts consider whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether the individual experiences "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted). Subjectively, the plaintiff must allege that the defendant "knew of and disregarded the plaintiff's serious medical needs." *Id.* at 703. That culpable mental state exceeds mere negligence and is akin to criminally reckless intent. *See Farmer v. Brennan*, 511 U.S. 825, 835, 839-40 (1994).

McClendon's allegations do not satisfy the objective component. McClendon's cut on his leg was not "sufficiently serious." *See Morehouse v. Vasquez*, 2020 WL 1049943, at *18 (S.D.N.Y. Mar. 4, 2020) ("District courts in the Second Circuit have consistently held that bruises, lacerations, cuts, black eyes, and other superficial injuries are 'not sufficiently serious to support' a deliberate indifference claim." (internal citations omitted)); *Gonzalez v. Hannah*, 2020 WL 3256869, at *6 (D. Conn. June 16, 2020) ("The lack of facts regarding the severity of the cut suggest that the cut did not constitute a serious risk of harm to his health or a serious medical need."); *Young v. Choinski*, 15 F. Supp. 3d 172, 183 (D. Conn. 2014) (holding that the plaintiff

failed to demonstrate his wounds were a serious medical need in part because the plaintiff did not allege the wounds "significantly interfered with his daily activities or caused him substantial or chronic pain").  The same holds for McClendon's anxiety or panic attack.  *See Brown v. Head Kitchen Dietician*, 2025 WL 1371788, at *3 (E.D.N.Y. May 12, 2025) (concluding that plaintiff's "alleged anxiety, pain, migraines, and nausea . . . for a single day do not constitute a sufficiently serious risk to his health").

Accordingly, I dismiss any deliberate indifference to medical needs claims.  28 U.S.C. § 1915A(b)(1).

**E. Requested Relief**

McClendon seeks four billion dollars in damages and injunctive relief in the form of a "hand[-]writt[en] apology from everyone involved."  Compl., Doc. No. 1 at 5.  To the extent McClendon seeks damages from any defendant in his or her official capacity, such relief is barred by the Eleventh Amendment.  *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985).  To the extent McClendon seeks damages from any defendant in an individual capacity, McClendon must allege facts establishing the personal involvement of each defendant in the alleged constitutional violations.  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks omitted) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 886 (2d Cir. 1991)).

"The Second Circuit has defined 'personal involvement' to mean direct participation, such as 'personal participation by one who has knowledge of the facts that rendered the conduct illegal,' or indirect participation, such as 'ordering or helping others to do the unlawful acts.'"  *Rivera v. Viger*, 2021 WL 3269095, at *3 (D. Conn. July 30, 2021) (quoting *Provost v. City of*

*Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001)).  When a defendant is a supervisory official, as some of the defendants are here, "a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability."  *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).  A plaintiff may not sue a defendant for a constitutional violation committed by another defendant solely based on their "high position of authority in the prison system."  *Wright*, 21 F.3d at 501.

I permit only McClendon's Eighth Amendment excessive force claim to proceed.  Only Pearson was personally involved because only he directly participated in the alleged use of excessive force.  Accordingly, McClendon may seek damages only from Pearson.

Additionally, an apology letter is not a form of injunctive relief that a court can grant.  In any event, "a transfer from a prison facility moots [a claim] for injunctive relief against the transferring facility."  *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996); *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.").  McClendon's transfer from Hartford CC to Robinson CI moots any claim for injunctive relief against the Hartford defendants.  Accordingly, I dismiss McClendon's request for a written apology.

## IV.    CONCLUSION

It is hereby ordered that:

    **(1)** The Eighth Amendment excessive force claim against Pearson will proceed for further development of the record.

    **(2)** All other claims are dismissed.

    **(3)** All other defendants are terminated.

(4) Within **twenty-one (21) days** of this Order, the Clerk shall verify the current work addresses of special parole officer Pearson, and mail a copy of the Complaint, this Order, and a waiver of service of process request packet to Pearson in his individual capacity at his confirmed address.  On the thirty-fifth (35th) day after mailing, the Clerk shall report to the Court on the status of each request.  If Pearson fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and Pearson shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(5) Pearson shall file a response to the Complaint, either an answer or motion to dismiss, within **thirty (30) days** from the date the Notice of Lawsuit and Waivers of Service of Summons forms are mailed to him or her.  If Pearson chooses to file an answer, Pearson shall admit or deny the allegations and respond to the cognizable claims recited above. Pearson may also include all additional defenses permitted by the Federal Rules.

(6) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order.  Discovery requests need not be filed with the Court.

(7) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(8) If McClendon changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that McClendon MUST notify the Court.  Failure to do so may result in the dismissal of the case.  McClendon must give notice of a new address even if he is incarcerated.  McClendon should write PLEASE NOTE MY

NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If McClendon has more than one pending case, he should indicate all case numbers in the notification of change of address. McClendon should also notify Pearson or the attorney for Pearson of his new address.

**(9)** McClendon shall utilize the Prisoner E-filing Program when filing documents with the Court.  McClendon is advised that the Program may be used only to file documents with the Court.  Local Court Rule 5(f) provides that discovery requests are not to be filed with the Court.  Therefore, discovery requests must be served on Pearson's attorney by regular mail.

**(10)** The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy of the Standing Order to the parties.

**(11)** The Clerk shall send a courtesy copy of the complaint and this order to the Connecticut Attorney General and the DOC Legal Affairs Unit.

So ordered.

Dated at Bridgeport, Connecticut, this 13th day of February 2026.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge